UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DOYLE EUGENE JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:12-CV-82 AGF-NAB |
| CAROLYN W. COLVIN[1], Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Doyle Johnson's ("Johnson") application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq.* Johnson alleges disability due to chronic obstructive pulmonary disease ("COPD"), high blood pressure, hepatitis C in remission, and post-traumatic stress disorder ("PTSD). This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 6].

I.  **Background**

On December 17, 2008, Johnson applied for disability insurance benefits. (Tr. 118-119.) The Social Security Administration ("SSA") denied Johnson's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 62-69, 70-71.) The SSA granted Johnson's request and the hearing took place on August 25, 2010. (Tr. 26-60, 75-76.)

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

The ALJ issued a written decision on January 12, 2011, upholding the denial of benefits. (Tr. 15-25.) Johnson requested review of the ALJ's decision by the Appeals Council. (Tr. 8-11.) On April 19, 2012, the Appeals Council denied Johnson's request for review. (Tr. 1-5.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Johnson filed this appeal on May 11, 2012. [Doc. 1.] The Commissioner filed an Answer. [Doc. 10.] Johnson filed a Brief in Support of Plaintiff's Complaint. [Doc. 14.] The Commissioner filed a Brief in Support of the Answer. [Doc. 17.]

## II. Decision of the ALJ

The ALJ found that Johnson met the insured status requirements of the Social Security Act through November 30, 2013 and has not engaged in substantial gainful activity since October 5, 2008, the alleged onset date of disability. (Tr. 17.) The ALJ determined that Johnson had the medically determinable impairments of mild COPD, controlled hypertension, hepatitis C in remission, mild PTSD, and mild dysthymia. (Tr. 17.) Next, the ALJ determined, however, that Johnson did not have an impairment or combination of impairments that has significantly limited or is expected to significantly limit the ability to perform basic work related activities for 12 consecutive months; therefore, he does not have a severe impairment or combination of impairments. The ALJ concluded that Johnson has not been under a disability, as defined in the Social Security Act from October 5, 2008 through the date of his decision.

Johnson contends that the ALJ misapplied the law when evaluating whether he had a severe impairment. The Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole.

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony[2]

Johnson appeared at the hearing with his wife. He was represented by counsel. At the hearing of this matter, the ALJ heard testimony from Johnson and vocational expert ("VE") Susan Shea.

#### 1. Johnson's Testimony

Johnson provided the following testimony. Johnson was sixty-two years old at the time of the hearing and he obtained a general education diploma when he was in the military. (Tr. 33-34.) Johnson's previous work included the following: (1) draw machine operator, (2) diesel mechanic, (3) radiator tester, (4) trailer assembly and (5) MIG welding. (Tr. 35-36, 39-41, 55-56.) At his last job in 2008, Johnson performed MIG welding and lifted up to fifty pounds. (Tr. 36.)

Johnson testified that he has not worked since he was laid off due to lack of work on October 5, 2008. (Tr. 35.) He applied for and collected unemployment insurance for more than a year. (Tr. 35.) While collecting unemployment, Johnson did not believe he was able to work, but decided he would try. (Tr. 35.) Johnson estimates that he could lift fifty pounds, but not for long. (Tr. 38.) Johnson stated he could stand or sit for thirty minutes at a time. (Tr. 38.) If he sits for an hour he has to get up and move around. (Tr. 38.) Johnson states he can walk for half of a mile, before stopping due to coughing. (Tr. 38, 42-43.)

When asked whether his physical or mental health issues limit his ability to work, Johnson answers that his physical health issues are more limiting. (Tr. 41.) Johnson testified that his biggest physical concern was his breathing. (Tr. 42.) He takes several medications daily for his breathing problems, but he has not quit smoking. (Tr. 42.) Since his pulmonary function

---

[2] The undersigned notes for the record that the ALJ asked Johnson and the vocational expert some questions before they were placed under oath.

test in February 2009, his breathing is worse. (Tr. 44.) Johnson testified that he had double carpal tunnel syndrome surgery and he has arthritis. (Tr. 45.) The arthritis, which flares up before it rains, causes his fingers to lock up and "hurt[] real bad." (Tr. 45.) Johnson also had a thumb replacement. (Tr. 46.) Johnson has smoked for fifty years and has been unable to quit. (Tr. 42.) Johnson smokes a pack and a half of cigarettes per day. (Tr. 48.)

Johnson testified he takes depression pills "for the things I've been in." (Tr. 44.) As a result of his PTSD, Johnson does not socialize and does not go out. (Tr. 47.) He is depressed most of the time and even contemplated suicide in the past. (Tr. 47.) Johnson stated he has had PTSD since returning from Vietnam, but has only received help for it within the past year. (Tr. 47.) His PTSD is better since he stopped working and it does not affect his sleep. (Tr. 47.) His COPD affects his sleep, because he cannot sleep more than three to four hours due to severe coughing. (Tr. 47-48.) In the past six months, he had blacked out three times after severe coughing. (Tr. 48.) Johnson previously received disability benefits for two years due to his Hepatitis C. (Tr. 48.) Johnson stated he eventually returned to work on his own.

### 2. VE Susan Shea's Testimony

Shea testified that Johnson's work as a MIG welder was medium, semi-skilled work. (Tr. 54.) Johnson's work as a radiator tester was light and unskilled. (Tr. 56.) Shea classified his work as a draw machine operator as medium, semi-skilled work. (Tr. 56.) Shea stated that Johnson's work as a radiator tester lacked transferrable skills. (Tr. 57.) Shea testified that a hypothetical individual approaching retirement age with past work experience as a MIG welder, radiator tester, and draw machine operator limited to light work, postural of occasional and the need to avoid exposure to irritants at least a moderate level or greater would be unable to do any past relevant work. (Tr. 57.)

4

### B. Medical Evidence

The medical evidence is as follows.

#### 1. Mental Impairments

On March 18, 2008, Johnson requested a consultation for PTSD from the John J. Pershing Veterans Affairs Medical Center (the "VA"). (Tr. 336-340.) In April 2008, the VA administered a PTSD-Checklist Military Edition and Johnson scored 64; a score of 50 or more is used to categorize PTSD in veterans. (Tr. 397.) Dr. John Wood administered a second PTSD-Checklist Military Edition in June 2008 and Johnson obtained a score of 46, but Dr. Wood noted Johnson had been seen for an individual session and scheduled for counseling since the initial test. (Tr. 397.)

Johnson's initial counseling session occurred on June 19, 2008. Psychologist Harold Bray, Jr. diagnosed Johnson with PTSD with depression and gave him a Global Assessment of Functioning ("GAF") score[3] of 50 due to Johnson's acknowledged frequent suicidal ideation without any specific plans, his lack of friends, and ongoing social isolation. (Tr. 317, 321.) Johnson received mental health treatment in June, July, and December 2008. During those visits, he denied homicidal or suicidal ideation. (Tr. 296, 307, 312, 436.) Johnson reported that he was not sleeping well, had bad memories, and avoided crowds and close relationships. (Tr. 296, 302, 307, 312, 436.) Drs. John Wood, Donald Scandell and Joseph Sunny diagnosed Johnson with dysthymia, depression, and PTSD. (Tr. 296, 307, 312, 397, 436.) Johnson's GAF scores were 50, 60, or 65 during this time period. (Tr. 302, 307, 313, 397, 436.)

---

[3] Global Assessment Functioning is a "clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000).

On February 19, 2009, the VA referred Johnson for a PTSD consultation with Dr. John Wood regarding an increase in VA disability benefits. (Tr. 389-393.) Johnson reported that he still experienced sleep problems and nightmares. (Tr. 389-390.) He also reported that he avoids crowds and is detached and disconnected from others. (Tr. 390.) Johnson denied homicidal or suicidal ideations. (Tr. 392.) Dr. Wood administered a Folstein mental status examination on Johnson and he scored a 27 out of 30; a score of 23 or less would suggest the need for further assessment. (Tr. 392.) Dr. Wood diagnosed Johnson with PTSD and partner relational problems. (Tr. 392.) Dr. Wood assessed Johnson's GAF as 60 and recommended that he obtain medical/psychiatric treatment and intervention, continue to obtain supportive psychotherapy, think things through, and develop an increased repertoire of behavior and emotional skills to better assist him with dealing with his present life circumstances. (Tr. 393.)

On March 4, 2009, Dr. Debra Rau, a psychiatrist, examined Johnson for a consultation regarding disability benefits. (Tr. 355-359.) Johnson reported that he had difficulty sleeping because of nightmares and flashbacks, a poor appetite, and he avoided being around other people. (Tr. 357.) Dr. Rau determined that Johnson's prognosis is guarded given his long history of psychological problems and recommended that he continue to seek out and receive outpatient counseling and medication management services on a regular basis. (Tr. 358.) Dr. Rau diagnosed Johnson with dysthymic disorder and PTSD with a GAF score of 55. (Tr. 358.) Dr. Rau opined that Johnson appeared to experience psychological symptoms that, currently, mildly interfere with his ability to perform work related functions including understanding and remembering instructions, sustaining concentration and persistence in tasks, and interacting socially and adapting to his environment. (Tr. 358.)

On March 19, 2009, Dr. Joan Singer completed a Psychiatric Review Technique and Mental RFC assessment for Johnson. (Tr. 360-374.) Dr. Singer opined that Johnson experienced dysthymia, PTSD, and anxiety. She found that he was moderately limited in the ability to carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and the ability to interact appropriately with the general public. (Tr. 372-373.) Dr. Singer concluded that Johnson has significant psychological impairments, but that his functioning is not impaired to the degree considered disabling. (Tr. 370.)

Johnson visited Drs. Scandell and Sunny for mental health treatment in March and June 2009. (Tr. 417-420, 430-434.) Johnson denied homicidal or suicidal ideation and reported that he was less depressed and had fewer nightmares. (Tr. 418, 432.) The doctors diagnosed Johnson with PTSD, depression, and dysthymia and his GAF scores were 55 and 60+. (Tr. 419, 420, 433.)

  **2. Physical Impairments**

On November 27, 2007 Johnson visited the Missouri Delta Medical Center. (Tr. 237.) Johnson complained of dry cough, post-nasal drip, and epidemoid cyst recurrence. (Tr. 237.) Johnson received a diagnosis of allergic rhinitis and hypertension. (Tr. 237.) He was referred for surgery. (Tr. 237.) On February 25, 2008, Johnson returned for a check-up and reported that he was not in any pain and he was diagnosed with hypertension. (Tr. 235-236.)

On July 4, 2008, Johnson visited the emergency room at Twin Rivers Regional Medical Center due to a fall onto a stainless steel table, which resulted in a laceration to the back of his head and loss of consciousness. (Tr. 245, 249). A CT scan of the cervical spine revealed no

evidence of acute cervical spine fracture, but showed chronic multi-level degenerative changes. (Tr. 259.)

On January 21, 2009, Johnson visited the VA for a check-up and reported that he wanted to quit smoking. (Tr. 403-411.) Dr. Louisa Lomax examined Johnson and the results were normal, including clear breath sounds and no muscular-skeletal problems. (Tr. 403-404.) Dr. Lomax diagnosed Johnson with hypertension, COPD, and tobacco use dependence. (Tr. 405.) Johnson underwent a pulmonary function test (spirometric test[4]) on February 4, 2009. The test results indicated borderline obstruction and no active pulmonary disease. (Tr. 348, 351, 354.)

On April 27, 2009, Dr. Shantilal Karavadia examined Johnson. Johnson's lungs produced bilateral clear breath sounds. (Tr. 422.) Dr. Karavadia diagnosed Johnson with COPD, hypertension, and depression. (Tr. 423.) Dr. Karavadia continued Johnson's current medications and added an albuterol nebulizer to be used as needed. (Tr. 423.) On October 20, 2010, a second pulmonary function test was done. (Tr. 441-443.) The test results indicated a normal pulmonary function. (Tr. 441.)

## IV. Legal Standard

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In a disability benefits case, the burden is on the claimant to prove that he or she has a disability. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

---

[4] A spirometer is "any device used for measuring flows and volumes, inspired and expired by the lungs, thus assessing pulmonary function." Stedman's Medical Dictionary 1674 (27th ed. 2000).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a). First, the claimant must not be engaged in substantial gainful activity. *Id.* Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(d). Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(f). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

It is the ALJ's function to resolve conflicts among opinions of various physicians and reject conclusions of any medical expert if they are inconsistent with the record as a whole. *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995). Subjective complaints of a disability benefits claimant may be discounted if there are inconsistencies in the evidence as a whole. *Guillams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005).

It is not the job of the district court to reweigh the evidence or review the factual record de novo. *Id*. This court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Id.* Therefore, even if this court finds

that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;
(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
(3) Any precipitating or aggravating factors;
(4) The dosage, effectiveness, and side effects of any medication; and
(5) The claimant's functional restrictions

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.*

V.      **Discussion**

Johnson alleges that the ALJ misapplied the law in his determination that Johnson did not have a severe impairment under step two of the five step process. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 404.1520(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not 'severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754; 20 C.F.R. § 416.920(a)(4)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d at 1043). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Id.* (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708.

Johnson contends that the ALJ misapplied the law, because "how can one conclude that someone who has suffered from PTSD for over forty years has only a slight abnormality?" Johnson also contends that one cannot conclude that one who suffers from COPD and requires two inhalants and no fewer than six breathing treatments per day, only has a slight abnormality. Finally, Johnson asserts that if the ALJ had two exhibits from nurse practitioner Cheryl Allen and Gary Ward, DO, the decision would have been different.

A.  **COPD**

The undersigned finds that the ALJ's finding that Johnson's COPD was not a severe impairment is supported by substantial evidence in the record. The medical evidence shows that Johnson has been diagnosed with COPD. There are two spirometry reports in the record from February 2009 and October 2010. The first test showed borderline obstruction and indicated no active pulmonary diseases. (Tr. 348, 351, 354.) The second test was normal. (Tr. 441.) His lungs were clear during his physical examinations, despite smoking two packs of cigarettes per day. (Tr. 354, 404, 422.) Johnson testified he had significant breathing problems, but there is no medical evidence in the record that his COPD meets the level of a severe impairment.

No treating or examining doctor has stated that Johnson's COPD or any other physical condition significantly limits his ability to perform basic work activities or even his activities of daily living. Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521(b). The objective evidence in the record as a whole does not suggest any impairments that would cause significant limitations in these areas. Johnson states that he can prepare his own meals, clean dishes, sweep floors, prepare laundry, mow the lawn, shop for groceries, and care for his personal needs. (Tr. 179-180.) Johnson believes that he can lift fifty pounds, squat and bend for 2 minutes, walk ½ mile, and climb 2 levels of stairs. (Tr. 183.) The substantial complaints Johnson made during his testimony are not supported by or are inconsistent with the relatively minor clinical findings of the objective medical evidence of record regarding the effects of his COPD.

Moreover, Johnson stopped working because he was laid off, not due to his COPD. (Tr. 35, 159.) Johnson also collected unemployment benefits for more than a year. To be eligible for

unemployment benefits, claimants must sign documents stating that they are capable of working and actively seeking work. *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994); *see also* Mo. Rev. Stat. § 288.040 (requirements for unemployment compensation claimants).

Johnson claims that if the ALJ had considered additional evidence from nurse practitioner Allen and Dr. Ward, the ALJ's decision would have been different. The undersigned disagrees. In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)). "In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* (citing *Riley*, 18 F.3d at 622). Thus, the appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole supports the decision made by the ALJ. *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012).

Dr. Ward and Allen completed a Medical Opinion Regarding a Capacity for Work and Pulmonary RFC Questionnaire. (Tr. 444-448.) In the medical opinion, they opined that Johnson could perform sedentary work. (Tr. 444.) In the RFC questionnaire, they indicated that Johnson's symptoms were shortness of breath, wheezing, episodic acute bronchitis, and coughing. (Tr. 445.) They also commented that "as long as he continues to smoke, he will expect recurrent exacerbations of COPD," "chronic obstructive pulmonary disease- doubt

improvement unless he has smoking cessation," and he is "instructed to quit smoking." (Tr. 445-446, 448.)

"Medical records [including the ones submitted by Johnson] reflect that smoking likely caused Johnson's COPD, and his continued smoking amounts to a failure to follow a prescribed course of remedial treatment." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008). All of Johnson's health care advisors, both mental health and physical, have advised him to stop smoking and referred him numerous times for assistance with smoking cessation. (Tr. 292, 294, 297-298, 311, 323, 334, 407, 416, 421, 448.) "This is not a case in which the correlation between claimant's smoking and the claimant's impairment is not readily apparent. To the contrary, there is no dispute that smoking has a direct impact on [Johnson's] pulmonary impairments." *Mouser*, 545 F.3d at 638 (internal citations omitted). "Impairments that are controllable or amenable to treatment do not support a finding of disability." *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009). "Without good reason, failure to follow prescribed treatment is grounds for denying an application for benefits." *Sadler v. Colvin*, No. 4:11-CV-1257 TIA at *16, 2013 WL 1316024 (E.D. Mo. Mar. 29, 2013). Johnson has failed to meet his burden to demonstrate that his COPD significantly limits his physical or mental ability to do basic work activities.

    **B.   PTSD**

The undersigned also finds that substantial evidence supports the ALJ's decision that Johnson's PTSD was not a severe impairment. Johnson has had PTSD since his time of service in Vietnam in the late 1960's, however, he did not seek treatment for his PTSD until 2008. (Tr. 336-340.) *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (claimant could not claim

disability where condition was not disabling and had not worsened during working years to prove disability).

At the time of his initial evaluation and counseling sessions in 2008, Johnson had frequent suicidal ideation, sleep disturbance, nightmares, bad memories and avoided crowds. (Tr. 317, 321.) Johnson's most recent mental health records, however, show that he denied homicidal and suicidal ideation and his nightmares and depression had decreased. (Tr. 418, 432.) The most recent mental health records also indicate that Johnson took his medication as prescribed and the medication was helpful. (Tr. 418.) The medical records also show that he reported sleeping better and that he was doing well and would call if he needed another appointment. (Tr. 418-419.) Johnson testified that his physical health issues keep him from working more than his mental health issues. (Tr. 41.) The objective medical evidence shows that Johnson's PTSD was generally controllable and improving, which does not indicate that his PTSD was a severe impairment. *Sadler*, at *15.

All of the treating and examining officials opined that Johnson had dysthymia and PTSD, but none found that he had any limitations that would significantly limit his ability to perform work related activities. Basic work activities include understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situation; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. Dr. Rau opined that Johnson's psychological symptoms only mildly interfered with his ability to perform work related functions including understanding and remembering instructions, sustaining concentration and interacting socially and adapting to his environment. (Tr. 358.) Johnson's GAF scores from Drs. Bray, Wood, Scandell, and Sunday indicate only a

mild or moderate difficulty in social, occupational, or school functioning. (Tr. 302, 307, 313, 397, 419, 420, 433, 436.)

The ALJ acknowledged that Johnson was a veteran and had a consistent work history prior to the alleged onset date of disability, which coincided with his layoff from work. (Tr. 19.) "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Nunn v. Heckler*, 732 F2d 645, 648 (8th Cir. 1984). In this case, Johnson's work history was consistent between 1964 and 2008. (Tr. 140.) The objective medical evidence, however, does not support that his impairments significantly limit his ability to work. Therefore, substantial evidence supported the ALJ's finding that Johnson's PTSD was not a severe impairment.

## VI. Conclusion

Substantial evidence in the record as a whole supports the ALJ's conclusion that Johnson's physical and mental impairments do not significantly limit his ability to perform basic work activities. Based on the foregoing, the undersigned recommends that the ALJ's decision be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Johnson in his Complaint and Plaintiff's Brief in Support of Complaint be **DENIED**. [Doc. 1, 14.]

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn W. Colvin for Michael J. Astrue in the court record of this case.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of

time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Halpin v. Shalala*, 999 F.2d 342, 345 (8th Cir. 1993).

Dated this 12th day of August, 2013.

   /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE